# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

KMMENTOR, LLC *et al*,

          *Plaintiffs,*

Case No. 06-2381-EFM

vs.

KNOWLEDGE MANAGEMENT
PROFESSIONAL SOCIETY, INC. *et al.*

          *Defendants.*

## MEMORANDUM AND ORDER

"Knowledge is a process of piling up facts; wisdom lies in their simplification."[1]  This case involves several parties engaged in the knowledge management field, a field that creates and uses data and information to manage knowledge. The proceedings so far have been highly contentious, and the parties have compiled numerous facts but have not simplified the process.

Before the Court in Case No. 06-2381 is KM Mentor's Motion for Judgment on the Pleadings (Doc. 87); Motion for Partial Summary Judgment as to Counterclaims (Doc. 90); and Second Motion to Strike Declarations in Support of Motion for Summary Judgment. (Doc. 111).

---

[1]Martin H. Fischer, *Encore: A Continuing Anthology,* "Fischerisms" p. 309 (Dent Smith ed., 1945); *also available at* http://km.nasa.gov/whatis/KM_Quotes.html.

Also before the Court is Defendants Kirsch's, Leitch's, and Hulehan's Motion for Summary Judgment (Doc. 96) and the KMPro parties' Motion for Partial Summary Judgment (Doc. 98).

As described in detail below, the Court grants KM Mentor's Motion for Judgment on the Pleadings, grants in part and denies in part KM Mentor's Motion for Partial Summary Judgment, and denies KM Mentor's Second Motion to Strike Affidavit. In addition, the Court denies the KMPro parties' Partial Motion for Summary Judgment and denies Kirsch's, Leitch's, and Hulehan's Motion for Summary Judgment.

## I. General Background and Applicable Procedural Rules

There are three cases that are related. These include *Triple-I v. Hudson Associates Consulting, Inc. et al.*, No. 06-cv-2195-EFM-KMH (the "Triple-I Case");[2] *KM Mentor, LLC et al. v. Knowledge Management Professional Society, Inc. et al.*, No. 06-cv-2381-EFM-KMH (the "KM Mentor Case");[3] and *Hudson Associates Consulting, Inc. et al. v. Eric Weidner, et al.*, No. 06-cv-

---

[2]In Case No. 06-2195, the plaintiff is Triple-I. The defendants and counter-plaintiffs are Hudson Associates Consulting, Inc. and Knowledge Management Professional Society. The remaining Triple-I claims are: (1) cancellation of trademark under K.S.A. § 81-210; (2) tortious interference with business advantage; (3) cancellation of the mark "Certified Knowledge Leader (CKL)" under the Lanham Act; and (4) cancellation of the mark "CKM Instructor (CKMI)" under the Lanham Act. Two claims, fraudulent representation under K.S.A. § 81-212 and cancellation of the Kansas and Virginia marks under the Lanham Act, were previously dismissed.

The KMPro parties' counterclaims are: (1) trademark infringement under 15 U.S.C. § 1114; (2) unfair competition under 15 U.S.C. § 1125; (3) state trademark acts; (4) common law unfair competition; (5) tortious interference with business expectancies; (6) contributory trademark infringement; and (7) civil conspiracy to tortiously interfere, infringe marks, and unfairly compete.

[3]In Case No. 06-2381, the plaintiffs are KM Mentor and Douglas Weidner ("KM Mentor"). The defendants and counter-plaintiffs are Hudson Associates Consulting, Inc., Knowledge Management Professional Society, Dan Kirsch, John Leitch, and Wayne Hulehan ("the KMPro parties"). None of the parties in Case No. 06-2381 reside in Kansas.

KM Mentor's remaining claims are: (1) copyright infringement; (2) contributory copyright infringement; (3) infringement of trademark acts; (4) cybersquatting; (5) fraud; (6) conversion; (7) unfair competition; (8) false advertising under Virginia law; (9) breach of contract; (10) unjust enrichment; (11) misappropriation of trade secrets; and (12) conspiracy to injure trade or business. KM Mentor's defamation claim was previously dismissed.

The KMPro parties' counterclaims are: (1) trademark infringement under 15 U.S.C. § 1114; (2) unfair competition under 15 U.S.C. § 1125; (3) revised Kansas Trademark Act; (4) common law unfair competition; (5) tortious interference with business expectancies; (6) contributory trademark infringement; (7) cybersquatting; (8) breach of contract; (9) Virginia Computer Crimes Act violations; (10) civil conspiracy to tortiously interfere, infringe marks, and

2461-EFM-KMH (the "Hudson Case").[4]  With respect to the parties, the Court will generally refer to Knowledge Management Professional Society ("KMPro"), Hudson Associates Consulting, Inc. ("Hudson"), Dan Kirsch, John Leitch and Wayne Hulehan as the KMPro parties.  KM Mentor, LLC and Douglas Weidner will be collectively referred to as KM Mentor. International Knowledge Management Institute, LLC ("IKMI"), Eric Weidner, Brandon Weidner, and Wendy Johnson Weidner will be collectively referred to as the Weidner parties. Generally, KM Mentor and the Weidner parties are aligned.

The first case, Case No. 06-2195, was filed in the District of Kansas. The second case was filed in the Eastern District of Virginia but was later transferred to the District of Kansas on September 12, 2006. The third case was filed in the District of Kansas on October 24, 2006. These three cases are consolidated for purposes of discovery because they all involve similar claims and counterclaims regarding certain service marks. The order consolidating the three cases states that pleadings related to dispositive motions should be filed in the specific case.

The Court is now considering numerous dispositive motions.  In Case No. 06-2195, there are four pending motions for partial summary judgment.  In Case No. 06-2381, there is one pending

---

unfairly compete; (11) declaration of copyright and common law trademark unenforceability; (12) conversion; and (13) fraud.

[4]In Case No. 06-2461, the plaintiffs are Hudson Associates Consulting, Inc., Knowledge Management Professional Society, and Dan Kirsch ("the KMPro parties").  The defendants are Eric Weidner, Wendy Weidner, Brandon Weidner, International Knowledge Management Institute (IKMI), Ronald Dysvick, Robert Spachman, and Knowledge Central Corporation. None of the parties in Case No. 06-2461 reside in Kansas.
The KMPro parties' claims are: (1) trademark infringement under 15 U.S.C. § 1114 (against all named defendants); (2) unfair competition under 15 U.S.C. § 1125 (against all named defendants); (3) revised Kansas Trademark Act (against all named defendants); (4) common law unfair competition (against all named defendants); (5) tortious interference with business expectancies (against all named defendants); (6) contributory trademark infringement (against all named defendants); (7) cybersquatting (against IKMI and Weidners); (8) Virginia Computer Crimes Act violations (against IKMI and Weidners); (9) defamation (against Knowledge Central and Dysvick); (10) civil conspiracy to tortiously interfere, infringe marks, and unfairly compete (against all named defendants); and (11) declaration of copyright and common law trademark unenforceability (against IKMI and Weidners).

-3-

motion for judgment on the pleadings, three pending motions for partial summary judgment, and a motion to strike an affidavit attached to a summary judgment motion. In all, there are five motions pending in Case No. 06-2381. In Case No. 06-2461, there are seven pending motions for partial summary judgment or motion for judgment on pleadings. In total, the Court is considering sixteen motions related to these three cases.

The required rules for summary judgment motions in the District of Kansas are set forth in D. Kan. Rule 56.1. Under that rule, "[a]ll material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party."[5] D. Kan. Rule 56.1(b) addresses opposing motions for summary judgment. It states:

> **(b) Opposing Memorandum**
> (1) A memorandum in opposition to a motion for summary judgment shall begin with a section that contains a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute shall be numbered by paragraph, shall refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, shall state the number of movant's fact that is disputed.
> (2) If the party opposing summary judgment relies on any facts not contained in movant's memorandum, that party shall set forth each additional fact in a separately numbered paragraph, supported by references to the record, in the manner required by subsection (a), above. All material facts set forth in this statement of the non-moving party shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the reply of the moving party.

---

[5]D. Kan. Rule 56.1(a).

There are numerous issues with the KMPro parties' responses.[6] First, as noted above, the District of Kansas has specific rules regarding motions for summary judgment. Facts not properly controverted are deemed admitted. In Case No. 06-2381, the KMPro parties do not properly controvert any of the eighty-three facts set forth by KM Mentor as there was no section containing a concise statement of material facts to which they objected. They merely state that "[t]here is ample record evidence to show that the parties controvert every material fact that could make a difference to the result in this litigation."

In addition, the KMPro parties do not direct the Court to the portion of the record upon which they rely upon to oppose the facts as set forth by KM Mentor. Instead, they direct the Court to numerous documents contained in the two companion cases. Furthermore, the KMPro parties do not even direct the Court to the actual documents but instead direct the Court to their "responses" to certain motions.[7]

---

[6]One example is as follows: In Case No. 06-2381, KM Mentor filed their motion for partial summary judgment (Doc. 90). In response, the KMPro parties filed a two-page opposing memorandum stating that the facts in KM Mentor's memorandum do not differ materially from those facts set forth in Doc. 64 in Case No. 06-2461 and that the denials of those facts in their response to Doc. 64 are "equally relevant." Notably, the KMPro parties do not direct the Court to their specific document. In addition, the KMPro parties assert that they "further incorporate by this reference their factual response, arguments and authorities set forth in opposition to the very similar memoranda in support of Triple-I's two motions for partial summary judgment on behalf of Triple-I, Doc. 409/412, and on behalf of Spachman, Dysvick and Knowledge Central Corporation, Doc. 410/415." The KMPro parties state that their factual responses to these memorandums are "equally pertinent," but again, they do not direct the Court to their specific documents.

In Case No. 06-2461, the Court can determine that the responsive document is Doc. 83. In Doc. 83, the KMPro parties frequently deny facts but fail to cite to the record or provide evidence to the Court for support of their denial. Responding to a fact by stating "denied, objection" and then making generalized and/or specific statements with no citation to any evidence for support of the denial does not appropriately controvert a fact for summary judgment. For example, fact number 73 is "denied," and there is an almost two page listing of certain documents that appear to reference Bates stamped documents. Yet, the KMPro parties do not list these documents as exhibits to this responsive document or inform the Court that these documents are provided as exhibits. Indeed, no exhibits were attached or filed with Doc. 83 in Case No. 06-2461. It does not appear that the briefs filed with the Court were even proofread. As such, the KMPro parties do not appropriately controvert most facts that they contend are in dispute.

[7]This is problematic because in Case No. 06-2381, the KMPro parties reference Case No. 06-2195 and state that they incorporate by reference their response to Doc. 409/412. However, Doc. 409 and Doc. 412 do not go together. Doc. 409 is Triple-I's Motion for Summary Judgment on Unfair Competition Counterclaims and the supporting memorandum for this motion is contained in Doc. 414. Doc. 408 is a Motion for Partial Summary Judgment on Counts

"[I]t is the duty of the parties contesting a motion for summary judgment to direct the court to those places in the record where evidence exists to support their positions."[8]  The Court will not sift through the record in an attempt to find a genuine issue of material fact or locate arguments for the parties.[9]  It is the party's responsibility to tie the facts to its legal contention.[10]  "Without a specific reference, 'we will not search the record in an effort to determine whether there exists dormant evidence which might require submission of the case to a jury.'"[11]

While the Court is aware that the claims in these three cases are all very similar, the responsibility is on the parties to demonstrate how they overlap or differ.  It also is the parties' responsibility to present their arguments and authorities in an understandable fashion.  A three page response incorporating seven briefs filed in three different cases is not understandable. If the parties are seeking a ruling on a discreet issue, they cannot incorporate by reference their arguments with regard to other issues and expect the Court to know which facts or arguments apply to their specific

I and III and the supporting memorandum for this motion is contained in Doc. 412.  As such, the Court is not even sure to which response the KMPro parties are directing the Court.

The problem is further compounded because even if the Court considers the documents to which it believes it may be directed, it does not appear that these documents are responsive.  For example, the KMPro parties incorporate by reference and direct the Court to their response to Doc. 409/412 in Case No. 06-2195.  As noted above, these documents do not go together.  However, assuming the KMPro parties meant to reference their response to Doc. 409/414, their response is Doc. 442.  This is a two-page document, and it states that the KMPro parties incorporate by reference all of their responses to Triple-I's facts in Doc. 439.  In addition, the KMPro parties incorporate by reference all the legal authorities contained in their Opposition to Triple-I Corporation's Motion for Judgment on the Pleadings (Doc. 338).  The KMPro parties have now directed the Court to numerous documents in multiple cases, and it is entirely unclear to the Court how these documents address the eighty-three specific facts set forth in Case No. 06-2381.

[8]*Boldridge v. Tyson Foods, Inc.,* 2007 WL 1299197, at *2 (D. Kan. May 2, 2007) (citing *Caffree v. Lundahl*, 143 Fed. Appx. 102, 106 (10th Cir. 2005) and *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1513-14 (10th Cir. 1990) (stating that not only will the court not sift through the record to find support for an argument, the court will not manufacture arguments for the party)).

[9]*Boldridge*, 2007 WL 1299197, at *2; *see also Cross v. The Home Depot*, 390 F.3d 1283, 1291 (10th Cir. 2004).

[10]*Boldridge*, 2007 WL 1299197, at *2 (citation omitted).

[11]*Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995) (citations omitted).  *See also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

issue.  While the Court recognizes that there *may* be evidence somewhere to support the KMPro parties' assertions and denials, it is not directed to it.  The record in these three cases is voluminous, and the Court will not search for the KMPro parties' evidence. The Court will deem as admitted all facts not specifically controverted by the record.  To the extent that the record does not support KM Mentor's factual contentions, the Court will disregard those facts.  If the Court could easily ascertain to which document the KMPro parties directed the Court, the Court will consider that document.

## II.  Choice of Law

This case was originally filed in the United States District Court for the Eastern District of Virginia.  It was then transferred to this Court pursuant to 28 U.S.C. § 1404(a). "[T]he transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue.  A change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms."[12]  The parties appear to agree that Virginia law applies to the fraud claim in the KMPro parties' counterclaim.  However, with respect to the eleven other claims in the counterclaim and the ten claims in KM Mentor's complaint, neither party specifically addresses choice of law issues.

With respect to the parties' federal claims of trademark and copyright infringement,  KM Mentor primarily relies on federal law from across the United States, including some Tenth Circuit law. As to several other claims, KM Mentor relies on the District of Kansas interpretation of federal law. The KMPro parties primarily rely on Tenth Circuit law, with some federal law from across the United States.

---

[12]*Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964); *see also Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir. 1996).

With regard to the state law claims, both parties cite to Kansas and Virginia law for the KMPro parties' tortious interference with contract claim and civil conspiracy claim. Both parties bring a breach of contract claim against the other party. The contract has a specific provision that it will be governed by both Maryland and Virginia law.

The Court will consider the case law the parties provided to the Court. With regard to the federal claims, it is presumed to be consistent. The Court, however, will first rely on Tenth Circuit or Fourth Circuit law, to the extent available on a specific issue, and then look to the other federal circuit courts of appeals.[13]

## III. KM Mentor's Motion for Judgment on the Pleadings in Case No. 06-2381 (Doc. 87)

### A. Standard of Review

Responsive pleadings have already been filed, and this motion is brought pursuant to Fed. R. Civ. P. 12(c) rather than Fed. R. Civ. P. 12(b)(6). This is a distinction without a difference as the standard is the same under Rule 12(c) and Rule (12)(b)(6).[14] To survive a motion to dismiss for failure to state a claim upon which relief can be granted, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level," and must contain "enough facts to state a claim to relief that is plausible on its face."[15] Under this standard,

---

[13]Neither party has briefed the issue as to whether the transferee or transferor circuit's law would be binding precedent on this Court with regard to the parties' federal claims. At least one district court has found that when a case is transferred pursuant to 28 U.S.C. § 1404(a) and jurisdiction was founded on the basis of federal question jurisdiction, the district court must apply the transferee circuit's law as binding precedent. *See Hartline v. Sheet Metal Workers' Nat'l Pension Fund*, 201 F. Supp. 2d 1, 2-4 (D.D.C. 1999); *see also Center Cadillac, Inc. v. Bank Leumi Trust Co.*, 808 F. Supp. 213, 222-24 (S.D.N.Y. 1992). Without deciding this issue, the Court will first consider Tenth Circuit opinions as the case is now located in the District of Kansas and then Fourth Circuit opinions because this case was first filed in the Eastern District of Virginia. The Court does not discern any noticeable conflicts.

[14]*Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003); *see also Cappetta v. GC Services Ltd. P'ship*, 654 F. Supp. 2d 453, 456 (E.D. Va. 2009) (citing *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).

[15]*Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007).

"the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."[16] The allegations must be enough that, if assumed to be true, the plaintiff plausibly, not merely speculatively, has a claim for relief.[17]

### B. Analysis

#### Count XI - Declaration of Copyright and Common Law Trademark Unenforceability

The KMPro parties' eleventh claim is entitled "Declaration of Copyright and Common Law Trademark Unenforceability." They incorporate by reference the preceding 121 paragraphs of their Counterclaim and state that the "the conduct of KMMentor and Weidner, and their agents, affiliates, and co-conspirators, as alleged constitutes inequitable conduct such as to require a declaration by this Court that any copyright or unregistered trademark obtained by them relating to knowledge management is invalid and unenforceable." KM Mentor asserts that the KMPro parties have asserted a claim of inequitable conduct and have failed to allege it with particularity.

Inequitable conduct is usually seen as an affirmative defense in patent litigation in which the defendant alleges that plaintiff's patent is invalid because plaintiff engaged in fraudulent conduct before the United States Patent and Trademark Board ("USPTO"). "[A]lthough patent misuse is an affirmative defense, it may also form the basis for a declaratory judgment counterclaim of uneforceability."[18]

---

[16] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[17] *Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008).

[18] *Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, 255 F.R.D. 443, 447 (W.D. Mich. 2009); *see also Thermal Solutions, Inc. v. Imura Int'l U.S.A., Inc.*, 2008 WL 4499967, at *1 (D. Kan. Oct. 2, 2008).

In this case, there are no patent claims. There are, however, trademark and copyright claims. Neither party addresses the distinction between a patent, trademark, or copyright claim or whether inequitable conduct is even applicable to a trademark or copyright claim. While the majority of the cases KM Mentor cites to are cases relating to the affirmative defense of inequitable conduct with regard to patent infringement, KM Mentor has cited to one case referencing inequitable conduct and trademark unenforceability.[19] They have cited to no cases referencing inequitable conduct and copyright unenforceability. Both parties have briefed the issue as if the patent inequitable conduct analysis is equally applicable to trademark and copyright claims. Accordingly, the Court will address whether the KMPro parties have adequately pled an inequitable conduct claim relying on the parties' briefing.

"Inequitable conduct includes affirmative misrepresentation of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive."[20] Federal Rules of Civil Procedure 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake." Although on its face Fed. R. Civ. P. 9(b) only concerns "fraud or mistake" allegations, several courts, including the Eastern District of Virginia and the District of Kansas, have considered this rule and concluded that inequitable conduct must be pled with particularity.[21]

---

[19]That case is *Cynergy Ergonomics, Inc. v. Ergonomic Partners, Inc.*, 2008 WL 2817106, at *5 (E.D. Mich. July 21, 2008).

[20]*Applied Interact, LLC v. Continental Airlines, Inc.*, 2008 WL 177740, at *6 (E.D. Va. Jan. 17, 2008) (citing *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995)).

[21]*Id.* at *3-6 (compiling cases); *see also Thermal Solutions*, 2008 WL 4499967, at *2.

Under Rule 9(b), a party must plead with particularity the time, place and contents of the false representation, the identity of the person making the false statements, and the consequences thereof.[22] Similarly, when determining whether the affirmative defense of inequitable conduct is adequately pled, the Eastern District of Virginia considers four pleading specifics.[23] These include: "(1) [t]he time of the inequitable conduct; (2) [t]he place of the inequitable conduct; (3) [t]he parties responsible for the inequitable conduct; and (4) [t]he contents of the inequitable conduct."[24]

KMMentor contends that the KMPro parties have failed to state a claim because they have not alleged with particularity the elements of inequitable conduct. They state that the KMPro parties have failed to specify any statements, actions, or acts. In addition, they assert that the KMPro parties did not provide information as to which of the Plaintiffs committed such acts or when and where such acts occurred.

The KMPro parties assert that their claim of inequitable conduct incorporates by reference all of the detailed factual allegations and causes of action in the preceding 121 paragraphs, and "[i]t is simply not true that they fail to specify any statements or actions of the Plaintiffs that could give rise to declaratory relief based on inequitable conduct." However, they fail to direct the Court to any of the previous 121 paragraphs that are relevant and specific to their claim and instead ask the Court to consider seven other documents contained in three separate cases as sufficient pleading and proof of inequitable conduct in this case.

---

[22]*See Koch v. Koch Indus. Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

[23]*Applied Interact*, 2008 WL 177740, at *7 (citations omitted).

[24]*Id.*

In looking at the pleading that is at issue - the Counterclaim - the Court finds that the KMPro parties have failed to plead inequitable conduct with particularity. The KMPro parties do not satisfy the specific pleading requirements. While the parties are generally identified, there are no specific allegations as to which party performed any acts.

With regard to allegations of the place of the inequitable conduct, as noted above, a party alleging inequitable conduct generally alleges that inequitable conduct occurred before the USPTO when the party obtained the patent, and the party seeks the unenforceability of that patent. Here, the KMPRo parties are seeking unenforceability of trademarks that are *not* registered with the USPTO. Indeed, the allegations state that KM Mentor has tried to register a number of knowledge management-related trademarks with the USPTO but have abandoned most applications after initial negative action. There are no specifics as to what trademarks KM Mentor "tried to register" or when these attempts were made. As such, there does not appear to be allegations of inequitable conduct before the USPTO.

The KMPRo parties are also seeking unenforceability of copyrights. The counterclaim merely states that KM Mentor and Weidner have applied for copyrights for materials that violate and infringe Hudson's and KMPro's marks. There is no further information or allegations relating to KM Mentor's or Douglas Weidner's copyrights. Accordingly, the Counterclaim is lacking in specifics as to the place of the inequitable conduct.

In addition, the Court finds that the complaint is lacking in detail and particularity as to the time and content of the inequitable conduct. The KMPro parties have failed to state when KMMentor and Weidner made affirmative misrepresentations of material fact, failed to disclose material information, or submitted false information with the intent to deceive. The allegations in

the Counterclaim are not specific as to what or to whom affirmative misrepresentations were made. There is no particularity as to the misrepresentation of the services. The Counterclaim also lacks specificity as to when the Counterclaim Defendants misrepresented material facts. Here, the Counterclaim is lacking in detail as to the specifics of the place, time, content of the alleged misrepresentations or omissions, and consequences of the misrepresentations. As such, the Court grants KM Mentor's motion for judgment on the pleadings as to Count XI.[25]

### Count XIII - Fraud

The KMPro parties' thirteenth claim in Case No. 06-2381 is for fraud. They incorporate by reference the preceding 127 paragraphs of their Counterclaim and state that "Counterclaim Defendants and their agents . . . have knowingly, willfully, and materially misrepresented and concealed their identities and authority, and those of their agents . . . to a banking institution which misrepresentation allowed them to take funds belonging to KMPro." In addition, they state that KMPro's agent, the bank, was unaware of the falsity of the representations and the omissions and relied on them to KMPro's detriment.

The parties agree that Virginia law applies to the fraud claim. Federal Rules of Civil Procedure 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake." In Virginia, a cause of action for fraud requires: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled."[26] "[T]he factors of a fraud claim that

---

[25]Both parties assert that should the Court determine that their complaint is lacking in specifics or is inconsistent, they seek leave to amend the pleadings. The Court denies these requests.

[26]*Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 507 S.E. 2d 344, 346 (Va. 1998) (citations omitted).

must be pled with particularity are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'"[27]

The Court finds that the KMPro parties' counterclaim is lacking in detail as to several elements. The allegations fail to specify the identity of the persons making the misrepresentations, as well as the time, place, and content of the false representations. Although the KMPro parties allege that misrepresentations were made, they do not allege with specificity anything about the misrepresentations.

"Under Rule 9(b) and Virginia law, a fraud complaint must allege with particularity a false representation by defendant of a material fact with the intent to mislead, and that plaintiff reasonably relied on the representation to her detriment."[28] Here, the KMPro parties do not allege that false representations were made to the KMPro parties or that they relied on them. Instead, they allege that misrepresentations were made to a banking institution and the bank's reliance on the misrepresentations was to the KMPro parties' detriment.

The KMPro parties conclusorily assert that they may maintain a fraud action because they have alleged that the bank, acting as their agent, justifiably relied on KM Mentor's misrepresentations to the KMPro parties' detriment. However, the KMPro parties do not direct the Court to any authority that stands for this proposition. "[U]nder Virginia law, only the party who actually relied on the alleged misrepresentation can maintain an action for actual fraud."[29] Here,

---

[27]*Frank Brunckhorst CO., L.L.C. v. Coastal Atl., Inc.*, 542 F. Supp. 2d 452, 460 (E.D. Va. 2008) (quoting *Harrison*, 176 F.3d at 784). *See also Koch*, 203 F.3d at 1236.

[28]*Kline v. Nationsbank of Virginia, N.A.*, 886 F. Supp. 1285, 1295 (E.D. Va. 1995).

[29]*RBA Capital, LP v. Anonick*, 2009 WL 960090, at *4 (E.D. Va. Apr. 8, 2009) (citations omitted).

there are no allegations that the KMPro parties relied on an alleged misrepresentation to their detriment. As such, it appears that the KMPro parties have not adequately pled fraud.

KM Mentor has also filed a motion for partial summary judgment in which they assert that they are entitled to summary judgment on the KMPro parties' fraud claim because the KMPro parties have no evidence to support their claim.[30] In support of that motion, KM Mentor sets forth more specific facts than the Counterclaim does with regard to identity, time, place, and content of the false representations. The uncontroverted facts contain statements identifying the individuals who allegedly made the representations and the date on which the alleged representation was made.[31] As such, the Court is aware of some specifics with regard to the KMPro parties' fraud claim although the specifics are not set forth in the Counterclaim.

However, one of the uncontroverted facts states that "KMPro did not rely upon the representations which form the basis of the fraud claim alleged in Count XIII of the Counterclaim." Two of the elements of a fraud claim require reliance by the party misled and resulting damage to the party misled. As stated above, only the party who relied on the misrepresentation has a fraud claim. As it is uncontroverted that KMPro did not rely upon misrepresentations, the KMPro parties cannot meet an essential element of a fraud claim in Virginia. Accordingly, the Court grants KM Mentor's motion for judgment on the pleadings as to Count XIII or in the alternative grants KM Mentor's motion for summary judgment as to Count XIII.

KM Mentor's Motion for Judgment on the Pleadings (Doc. 87) is hereby granted in its entirety.

---

[30]KM Mentor's argument as to summary judgment on the fraud claim is in Doc. 91 in Case No. 06-2381.

[31]The Court notes that these individuals - Eric Weidner and Brandon Weidner - are not parties to this particular lawsuit but are instead parties in Case No. 06-2461.

**IV. KM Mentor's Motion for Summary Judgment (Doc. 90)**

    **A. Legal Standard**

Summary judgment is appropriate if the moving party demonstrates that "there is no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."[32] "An issue of fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way."[33] A fact is "material" when "it is essential to the proper disposition of the claim."[34] The court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party.[35]

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[36] In attempting to meet this standard, the moving party need not disprove the nonmoving party's claim; rather, the movant must simply point out the lack of evidence on an essential element of the nonmoving party's claim.[37]

If the moving party carries its initial burden, the party opposing summary judgment cannot rest on the pleadings but must bring forth "specific facts showing a genuine issue for trial."[38] The opposing party must "set forth specific facts that would be admissible in evidence in the event of

---

[32]Fed. R. Civ. P. 56(c).

[33]*Haynes v. Level 3 Communications*, LLC, 456 F.3d 1215, 1219 (10th Cir. 2006).

[34]*Id.*

[35]*LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[36]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

[37]*Id.* (citing *Celotex*, 477 U.S. at 325.)

[38]*Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

trial from which a rational trier of fact could find for the nonmovant."[39]  Conclusory allegations alone cannot defeat a properly supported motion for summary judgment.[40]  The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."[41]  The Court is also cognizant that it may not make credibility determinations or weigh the evidence when examining the underlying facts of the case.[42]

### B. Uncontroverted Facts[43]

Preliminarily, the Court will address the trademarks at issue.  In their statement of uncontroverted facts, KM Mentor sets forth approximately twenty-one registered and unregistered trademarks that they believe are at issue.  For support, they rely on a statement of infringements filed by the KMPro parties on September 26, 2008.

On September 18, 2008, in a Status Conference Order, Magistrate Judge O'Hara required the KMPro parties, as well as KM Mentor, to file a detailed statement about the marks at issue with respect to each count.[44]  KM Mentor and the KMPro parties filed their statements on September 26,

---

[39]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000)(citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[40]*White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

[41]*Bones v. Honeywell Intern, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[42]*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

[43]The same facts will be set forth in this case and in Case No. 06-2461 with minor additions to the facts in Case No. 06-2461.

[44]Doc. 301 in Case No. 06-2195.  At that time, Judge O'Hara was the magistrate judge assigned, but the case was subsequently transferred to Magistrate Judge Humphreys. Doc. 348. Specifically, Judge O'Hara required the parties to "file a detailed statement with the following information with respect to each count: a. A complete and precise description of the marks at issue. b. Which adverse party (or parties) allegedly used each mark, and exactly how and on what dates(s) that occurred. c. If a word or phrase contained within the mark, or an abbreviation or acronym is associated with the mark, and allegedly was used in a manner likely to cause confusion, how and on what date(s) that occurred." Doc. 301, p. 4. Judge O'Hara required this "[i]n order to facilitate evaluation of the trademark and copyright infringement claims which the court believes will drive the ultimate settlement or adjudication of these cases." *Id.*

2008.[45] The KMPro parties' statement of infringements include approximately six registered federal marks, thirty-five registered state marks, and thirteen unregistered, common law marks.

Approximately nine months later, on June 15, 2009, the KMPro parties filed a motion to amend their complaint and counterclaims in each of the three consolidated cases.[46] They sought to add approximately forty-five additional marks. Although the KMPro parties only specifically referenced five marks in their motion, they also stated that they wanted to add all the marks stated in their Statement of Infringements filed on September 26, 2008.

The consolidated cases were all filed in 2006, discovery deadlines had passed, and the dispositive motion deadline for all three cases was set for June 19, 2009. On August 14, 2009, the Court denied their motion for leave to amend the complaint noting that the KMPro parties' motion to amend was untimely.[47] The Court found that "the respective positions and strategies in the consolidated cases have been highly contentious, requiring numerous conferences, hearings, and rulings," and allowing the amendments "would require a new round of discovery and the refiling of numerous dispositive motions." The Court noted that discovery was closed and the dispositive motion deadline had passed. Accordingly, the Court did not allow the KMPro parties to amend their complaint to add additional marks.

Generally, if a pretrial order has been entered, it governs the parties' claims.[48] Here, there is no pretrial order. Because there is no pretrial order and because the KMPro parties' motion to

_____

[45]Docs. 305, 307 in Case No. 06-2195.

[46]Doc. 407 in Case No. 06-2195. This was four days before the dispositive motion deadline of June 19, 2009.

[47]Doc. 445 in Case No. 06-2195.

[48]*Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th. Cir. 2002).

amend to add additional trademarks was denied, the Court will only address the trademarks included in the current complaints and counterclaims.

The KMPro parties' current counterclaim in Case No. 06-2381 is Doc. 14, and their current complaint, the Second Amended Complaint, in Case No. 06-2461 is Doc. 49.[49] The trademarks included in this counterclaim and complaint are: (1) "CKM Instructor (CKMI)" - a federally registered mark and registered in Virginia; (2) "Certified Knowledge Leader (CKL)" - a federally registered mark; (3) "Certified Knowledge Manager (CKM)" - a mark registered in Kansas and Virginia; and (4) "Knowledge Management Certification Board (KMCB)" - a federally registered mark and a mark registered in Maryland and Virginia.[50] The marks are used in conjunction with providing knowledge management certification and training.

"Knowledge management" describes "the technologies involved in creating, disseminating and utilizing knowledge data." "KM" is a commonly used abbreviation for "knowledge management." All of the parties are involved in the knowledge management field. KM Mentor, Douglas Weidner, Hudson Associates Consulting, Inc., and Dan Kirsch provide knowledge management training.

A "knowledge manager" is generally a job title or role for a person working in the knowledge management field. A knowledge manager may be "responsible for coordinating the

---

[49]The KMPro parties' current counterclaim in Case No. 06-2195 is Doc. 68.

[50]Two of the federally registered marks are registered to Hudson, while the third one is registered to Knowledge Management Professional Society.

All four of these marks are included in each complaint in the three cases but there are slight differences with respect to registrations in Virginia and Maryland. The KMPro parties sometimes include the fact that a mark is registered in Virginia and Maryland and sometimes do not include this fact. This does not appear to make a difference as there appears to only be a state law trademark infringement claim with respect to Kansas.

In addition, neither side is consistent in how they refer to these alleged trademarks. For example, the Court has seen "CKM Instructor (CKMI)" and "CKM INSTRUCTOR (CKMI)."

activities of other roles such as knowledge engineer and knowledge analyst." The term "knowledge manager" has been in use since at least 1995.

John Leitch, KMPro's President, Dan Kirsch, Hudson's President, and Wayne Hulehan, KMPro's Treasurer, all state that knowledge managers are persons working in the knowledge management field and are involved in an organization's knowledge management efforts. Certified knowledge manager is a term for a "knowledge manager" who has been "certified," and the dictionary definition for "certified" indicates "one to whom a certificate or license has been issued." "CKM" is a commonly used acronym which may refer to "certified knowledge manager" or "certified knowledge management."

"CKMI" is an acronym which refers to "Certified Knowledge Manager Instructor." "Certified Knowledge Leader" is a phrase that refers to one who is certified as a knowledge leader. "CKL" is an acronym that stands for "Certified Knowledge Leader."

Douglas Weidner helped found KMCI, a knowledge management professional society, in 1998. He helped launch the first knowledge management training, called the "Certified Knowledge Manager (CKM) Program," in early 1999 for KMCI, and he was one of the program's first-time CKM instructors.

From 1999 to 2001, on behalf of KMCI, Douglas Weidner provided KM training to individuals in association with the term "Certified Knowledge Manager (CKM)," "Certified Knowledge Manger," and "CKM." In early 2000, Douglas Weidner co-founded the Knowledge Management Certification Committee which held initial board meetings in February 2000. Subsequently, the other founder, Edward Swanstrom, moved to Tucson and incorporated it as

Knowledge Management Certification Board Inc. (KMCB), affiliated with eKnowledgeCenter (eKC), Inc.

In mid-2001, Douglas Weidner co-founded the Knowledge Management Professional Society (KMPro). The KMPro founders were Brandon Weidner, Eric Weidner, John Leitch, and one other individual. Douglas Weidner directed the KMPro Learning Center, and Leitch was President of KMPro. KMPro was to be a professional society with a focus on the CKM Program.

From 2001 to 2004, through KM Mentor and on behalf of KMPro, Douglas Weidner provided KM training to individuals in association with the terms "Certified Knowledge Manager (CKM)," "Certified Knowledge Manager," and "CKM." Since 2001, Weidner has provided KM training and certification to more than 2,200 students from over forty countries. Since 2004, through the International Knowledge Management Institute, LLC ("IKMI"), Weidner has provided KM training in association with the terms "Certified Knowledge Manager (CKM)," "Certified Knowledge Manager," and "CKM." From 1999 through the present, there have been several organizations offering knowledge management training called "Certified Knowledge Manager (CKM)" training or a close variation thereof.

Hudson is the registrant of a federally registered mark, "CKM Instructor (CKMI)." This mark was registered with the USPTO on December 27, 2005. In registering "CKM Instructor (CKMI)," the USPTO stated that Hudson "must disclaim the descriptive wording 'CKM INSTRUCTOR' apart from the mark as shown because it merely describes the feature of the identified services."[51]

_____

[51]KM Mentor provides USPTO documents and states that it obtained these documents from the USPTO website. The KMPro parties do not dispute the authenticity of these documents as they do not respond to the facts, and they do not provide any additional USPTO documents to the Court with their response with one exception.

In the KMPro parties' response to the motion for summary judgment filed in Case No. 06-2461, they direct the

The first use of the phrase "CKM Instructor (CKMI)," or any variation thereof, for business purposes was by Douglas Weidner in 2000.[52]

Hudson is also the registrant of the federally registered mark, "Certified Knowledge Leader (CKL)." This mark was registered with the USPTO on March 21, 2006.[53]

KMPro is the registrant of the federally registered mark, "Knowledge Management Certification Board (KMCB)." This mark was registered on April 11, 2006. In registering "Knowledge Management Certification Board (KMCB)," the USPTO stated that KMPro "must disclaim the descriptive wording 'KNOWLEDGE MANAGEMENT CERTIFICATION BOARD' apart from the mark as shown because it merely describes the nature and type of services offered."[54]

The first use of the phrase Knowledge Management Certification Board was by Edward Swanstrom in 2000 as a successor to the "Knowledge Management Certification Committee."

---

Court to their USPTO application/registration for the mark "CKM" located at Doc. 424 in Case No. 06-2195. In addition, they also include an excerpt of the CKM application as one of their responsive facts in Case No. 06-2461. CKM is not included in the Complaint or Counterclaims in these cases.

[52]While Weidner states in his affidavit that he only used the term from 2000 through 2005 and that KM Mentor and Weidner no longer use the term, KM Mentor filed its complaint against the KMPro parties in 2006. In KM Mentor's complaint filed in Case No. 06-2381, KM Mentor contends that it owns common law trademarks, including CKMInstructor (CKMI). The Court, therefore, cannot conclude that Weidner stopped using the mark in 2005 as undisputed.

[53]Although KM Mentor references USPTO documents regarding "Certified Knowledge Leader (CKL)," only one page of that exhibit relates to the mark "Certified Knowledge Leader (CKL)," and the rest of the cited exhibit relates to Knowledge Management Certification Board Etc. Accordingly, although KM Mentor states that the USPTO required the applicant to disclaim the descriptive wording CERTIFIED KNOWLEDGE LEADER apart from the mark because it merely describes services, the Court cannot verify this fact.

[54]The USPTO documents are not entirely clear as the document describes the mark as "Knowledge Management Certification Board Etc." and as "Knowledge Management Certification Board (KMCB)."

No federal registration has been issued, but a Kansas and Virginia registration has been issued for the mark "Certified Knowledge Manager (CKM)."[55] All of the trademarks are used in conjunction with providing knowledge management certification and training.

Douglas Weidner filed a trademark application for "CERTIFIED KNOWLEDGE MANAGER (CKM)" on June 30, 2004. He abandoned the application about a year later, after the USPTO advised him that "CERTIFIED KNOWLEDGE MANAGER (CKM)" is merely descriptive of the subject matter of the applicant's service . . . [and] CKM is a commonly recognized acronym for CERTIFIED KNOWLEDGE MANAGER."

Neither Douglas Weidner, Eric Weidner, Brandon Weidner, Wendy Johnson Weidner, IKMI, nor KM Mentor were aware of any business relationship between KMPro or Hudson and the U.S. Army or Cubic Defense Applications, Inc. before KMPro filed its lawsuit.[56]

**C. Analysis**

KM Mentor seeks summary judgment as to Counts I, II, III, IV, V, VI, VII, X, and XIII. The Court will address each claim.

### 1. Count I (Trademark Infringement under 15 U.S.C. § 1114) - Federally Registered Marks of CKM Instructor (CKMI), Certified Knowledge Leader (CKL), and Knowledge Management Certification Board (KMCB)

"A trademark is a distinctive mark, symbol, or emblem used by a producer or manufacturer to identify and distinguish his goods from those of others."[57] "To be protectable, 'a mark must be

---

[55]Neither KM Mentor nor the KMPro parties set forth facts with respect to the Kansas registration of "Certified Knowledge Manager (CKM)." In the KMPro parties' counterclaim, they state that they filed their application for registration of this mark in Kansas on February 9, 2006 and it was registered on February 13, 2006.

[56]As noted above, the Court has set forth facts applicable to both Case No. 06-2381 and Case No. 06-2461.

[57]*Educ. Dev. Corp. v. Economy Co.*, 562 F.2d 26, 28 (10th Cir. 1977).

capable of distinguishing the products [or services] it marks from those of others.'"[58] To determine the degree of protection, there are five ascending categories: generic, descriptive, suggestive, arbitrary, and fanciful.[59]

> A mark is generic if it is a common description of products [or services] and refers to the genus of which the particular product [or service] is a species. A mark is descriptive if it describes the product's [or service's] features, qualities, or ingredients in ordinary language or describes the use to which the product [or service] is put. A mark is suggestive if it merely suggests the features of the product [or service], requiring the purchaser to use imagination, thought, and perception to reach a conclusion as to the nature of the goods [or services]. An arbitrary mark applies a common word in an unfamiliar way. A fanciful mark is not a real word at all, but is invented for its use as a mark.[60]

If a term is generic, it is not eligible for protection because "the public has an inherent right to call a product or service by its generic name."[61] Suggestive, arbitrary and fanciful terms are entitled to the most protection.[62]  Certain descriptive terms fall in the middle.

Trademark protection is only available to marks that are distinctive.[63] "A mark that is merely descriptive of the characteristics, qualities, use or functions of the goods cannot be registered."[64] "A descriptive mark may be eligible for protection, but only if it has acquired a 'secondary meaning'

---

[58]*Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1216 (10th Cir. 2004) (citing *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 344 (2d Cir. 1999)).

[59]*Id.*

[60]*Id.*

[61]*Id.* (citing *U.S. Search, LLC v. U.S. Search.com, Inc.*, 300 F.3d 517, 523 (4th Cir. 2002)).

[62]*Id*.

[63]*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992).

[64]*Educational Development*, 562 F.2d at 28.

in the minds of the public."[65]  "Saying that a trademark has acquired 'secondary meaning' is shorthand for saying that a descriptive mark has become sufficiently distinctive to establish 'a mental association in buyers' minds between the alleged mark and a single source of the product.'"[66] "The categorization of a mark is a factual question."[67]

To establish a trademark infringement claim, a plaintiff must prove that: (1) the mark is valid and protectable; (2) defendant used the mark in commerce without consent; and (3) defendant's use of the mark is likely to cause confusion.[68] Under the Lanham Act,

> [a] certificate of registration of a mark upon the principal register provided by this chapter shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate, subject to any conditions or limitations stated in the certificate.[69]

The USPTO will not register a mark that is generic so "the fact that a mark is registered is strong evidence that the mark satisfies the statutory requirements for the distinctiveness necessary for trademark protection."[70]

---

[65]*Donchez*, 392 F.3d at 1216 (citing *U.S. Search*, 300 F.3d at 523).

[66]*Retail Services Inc. v. Freebies Publ'g*, 364 F.3d 535, 539 (4th Cir. 2004) (citing 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 15.5 (4th ed. 2003)).

[67]*Donchez*, 392 F.3d at 1216 (affirming district court's grant of summary judgment on the basis of undisputed facts).

[68]*Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1050 (10th Cir. 2008); *Universal Money Ctrs., Inc. v. AT & T Co.*, 22 F.3d 1527, 1529 (10th Cir. 1994).

[69]15 U.S.C. § 1057(b).

[70]*Retail Services,* 364 F.3d at 542  (citing 15 U.S.C. §§ 1052(e), 1057(b); 15 U.S.C. § 1064(3)).

A registered mark creates a rebuttable presumption that the trademark is valid.[71] The way in which the trademark is registered with the USPTO may determine what type of presumption the registrant is entitled. If the USPTO "registers a mark without first requiring the applicant to prove secondary meaning, the holder of the mark is entitled to a presumption that its registered trademark is inherently distinctive, as opposed to merely descriptive."[72] The alleged infringer "may defend a suit on the ground that the mark does not merit protection because it is not inherently distinctive (i.e., not suggestive, arbitrary, or fanciful) but, rather, is merely descriptive of the product."[73]

If the USPTO required the registrant to provide proof of secondary meaning and registered the mark under Section 2(f),[74] the registrant of the mark is entitled to a presumption that the mark has acquired distinctiveness, rather than inherent distinctiveness.[75] This is also a rebuttable

---

[71]*Educational Development*, 562 F.2d at 28.

[72]*Borinquen Biscuit Corp. v. M.V. Trading Cor*p., 443 F.3d 112, 117 (1st Cir. 2006) (citation omitted); *see also Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 976 (10th Cir. 2002).

[73]*Borinquen*, 443 F.3d at 117.

[74]Section 2(f) of the Lanham Act, 15 U.S.C. § 1052(f), allows the registration of "a mark used by the applicant which has become distinctive of the applicant's goods in commerce" upon "proof of substantially exclusive and continuous use thereof as a mark by the applicant in commerce for the five years before the date on which the claim of distinctiveness is made."

[75]*Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 869-70 (8th Cir. 1994); *see also Arrow Fastener Co., Inc. v. Stanley Works*, 59 F.3d 384, 393 (2d Cir. 1995).

presumption.[76] "In a case involving a registered trademark where acquired distinctiveness (i.e., secondary meaning) is an issue, the timing of the effectiveness of that presumption is crucial."[77]

In any event, once the mark is registered, there is a presumption of validity that requires the party challenging the trademark to produce sufficient evidence to rebut the presumption. This presumption of validity "has a burden-shifting effect, requiring the party challenging a registered mark to produce sufficient evidence to establish that the mark is generic by a preponderance of the evidence."[78] "If sufficient evidence of genericness is produced to rebut the presumption, the presumption is neutralized and essentially drops from the case, although the evidence giving rise to the presumption remains."[79] Similarly, a party may rebut the presumption of inherent descriptiveness or acquired distinctiveness by producing sufficient evidence that the mark is merely descriptive or that the mark does not have secondary meaning.[80]

If a mark has not been registered with the USPTO, the plaintiff is not entitled to a presumption of validity but instead bears the burden of establishing the validity of the mark.[81]

---

[76]See *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 514 (6th Cir. 2007) (stating that the "[t]he effect of the statutory presumption contained in § 1115(a) is to shift the burden of proof to the alleged infringer . . . to prove the absence of secondary meaning."); *Aromatique*, 28 F.3d at 873 (finding that alleged infringer "successfully rebutted any presumption of distinctiveness by showing that the evidence submitted to the PTO was inadequate to support a finding of distinctiveness."); *Arrow*, 59 F.3d at 393 (finding that the USPTO's decision to register the mark after registrant submitted evidence of secondary meaning created a rebuttable presumption that mark enjoys secondary meaning.)

[77]*Aromatique*, 28 F.3d at 870.

[78]*Retail Services*, 364 F.3d at 542.

[79]*Id.* at 543 (internal quotation and citations omitted).

[80]See *Borinquen*, 443 F.3d at 117-18 (finding that when mark registered without the USPTO requiring registrant to prove secondary meaning, the alleged infringer "must offer significantly probative evidence to show that the mark is merely descriptive."); *see Arrow,* 59 F.3d at 393 (finding that alleged infringer did not direct the court to evidence sufficient to rebut the presumption that the mark enjoyed secondary meaning.)

[81]See *Utah Lighthouse*, 527 F.3d at 1050.

### a. Generic

KM Mentor asserts that the KMPro parties' marks are generic. A term is generic if it is used to describe the relevant product or service. If a term is generic because it refers to a general class of goods and does not indicate the particular source of an item, it does not receive trademark protection.[82] To determine whether a term is generic, some courts have relied upon the "Who are you? - What are you? test.[83] "A mark answers the buyer's questions 'Who are you?' 'Where do you come from?' 'Who vouches for you?' But the name of a product answers the question 'What are you?'"[84] Because a term may answer both questions simultaneously, "[t]he primary significance of the registered mark to the relevant public rather than purchaser motivation shall be the test for determining whether the registered mark has become the generic name of goods or services on or in connection with which it has been used."[85] "The generic name of a product – what it is – can never serve as a trademark."[86]

"When the relevant public ceases to identify a trademark with a particular source of a product or service but instead identifies the mark with a class of products or services regardless of source, that mark has become generic and is lost as an enforceable trademark."[87] To rebut the presumption that a mark is not generic, the alleged infringer "must offer sufficient proof that 'the primary

---

[82]*The Golf Warehouse, L.L.C. v. Golfers' Warehouse, Inc.*, 142 F. Supp. 2d 1307, 1309 (D. Kan. 2001).

[83]*Id.* at 1310.

[84]*Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1391 (9th Cir. 1993) (quoting 1 J. McCarthy, *Trademarks and Unfair Competition* § 12.01 (3d ed. 1992)); *see also Golf Warehouse*, 142 F. Supp. 2d at 1310.

[85]15 U.S.C. § 1064(3).

[86]*Official Airlines*, 6 F.3d at 1391.

[87]*Creative Gifts, Inc. v. UFO*, 235 F.3d 540, 544 (10th Cir. 2000) (citing *Glover v. Ampak, Inc.*, 74 F.3d 57, 59 (4th Cir. 1996)).

significance of the mark [is] its indication of the nature or class of the product or service, rather than an indication of source."[88] In addition, "the evidence must demonstrate the generic understanding of the mark from the viewpoint of the relevant public."[89]

"Evidence offered to rebut the presumption of validity may come from any number of sources, including purchaser testimony, consumer surveys, listings and dictionaries, trade journals, newspapers, and other publications."[90]  Additionally, evidence of genericness may come from "generic use by competitors, generic use of the term by the mark's owners, and use of the term by third parties in trademark registrations."[91]

In this case, the marks are compound and also involve an abbreviation or acronym. The Court must determine their validity by looking at the mark as a whole because "[c]ertain terms may connote more than the sum of their parts."[92] However, some composite terms "are nothing more than the sum of their parts."[93] "[I]f the components of a trade name are common descriptive terms, a

---

[88]*Retail Services*, 364 F.3d at 544 (citing *Glover,* 72 F.3d at 59); *see also Creative Gifts*, 235 F.3d at 544.

[89]*Retail Services*, 364 F.3d at 544 (internal quotation and citations omitted); *see also Creative Gifts*, 235 F.3d at 544 (citation omitted) and 15 U.S.C. § 1064(3).

[90]*Retail Services*, 364 F.3d at 544 (quotation and citations omitted); *see also Creative Gifts*, 235 F.3d at 545 (citation omitted).

[91]*Retail Services*, 364 F.3d at 544 (quoting *Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 406 (6th Cir. 2002)).

[92]*Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 938 (7th Cir. 1986).

[93]*Id.*

combination of such terms retains that quality."[94] "Abbreviations for generic or common descriptive phrases must be treated similarly."[95]

It is KM Mentor's burden to demonstrate that CKM Instructor (CKMI), Certified Knowledge Leader (CKL), and Knowledge Management Certification Board (KMCB) are generic because these marks are registered with the USPTO. The question with regard to whether these three marks are generic is whether the primary significance to the relevant public is an indication of the general class of product. Neither party specifically defines who the "relevant public" is, but the Court concludes that it is individuals interested in obtaining or purchasing knowledge management training. Here, KM Mentor offers evidence of dictionary definitions, testimony from several individuals in the knowledge management field regarding certain knowledge management terms, and excerpts from knowledge management articles and books. In addition, KM Mentor has provided copies of the KMPro parties' registrations with the USPTO as to several of their registered trademarks.[96] KM Mentor contends that this evidence demonstrates that these marks are generic.

All of the marks at issue are composite marks that also involve an abbreviation or acronym. With regard to the evidence provided by KM Mentor, it appears to be more specific with respect to Certified Knowledge Manager (CKM) and not the three federally registered marks. In addition, while KM Mentor has provided the Court with copies of the KMPro parties' registrations, these are not helpful. The USPTO required the KMPro parties to disclaim the phrases apart from the entire

---

[94] *Nat'l Conference of Bar Examiners v. Multistate Legal Studies, Inc.,* 692 F.2d 478, 488 (7th Cir. 1982).

[95] *Id.* (citation omitted). *See also Blinded Veterans Ass'n v. Blinded Am. Veterans Found.*, 872 F.2d 1035, 1041 n. 12 (D.C. Cir. 1989) ("[I]f the full name is generic, an abbreviation is treated similarly.").

[96] KM Mentor also provided excerpts from the KMPro parties' trademark applications for CKMI and CKM. As noted above, those trademarks were not included in the Counterclaim and are not specifically at issue in this proceeding because the Court denied the KMPro parties' motion to amend complaint.

mark because they were merely descriptive as they merely describe the feature of the identified services.[97] This would make it appear that the acronym is at issue, but the Court must look at the mark as a whole rather than examining its parts individually.[98] The fact that the USPTO registered the mark, with the disclaimer of the phrase, makes it appear to the Court that the USPTO was also aware of the acronym but nevertheless allowed registration of the marks. As noted above, the USPTO will not register generic marks and there is strong presumption that a mark is not generic if it is registered.

Although the Court finds that KM Mentor has produced some evidence suggesting the mark is generic, it finds that it is insufficient to overcome the presumption of validity.

### b. Merely Descriptive & Secondary Meaning

KM Mentor also asserts that if these marks are not generic, they are merely descriptive and lack secondary meaning. As stated above, the way in which a mark is registered may affect the presumption of validity. If the USPTO registered the mark without proof of secondary meaning, the registrant is entitled to the presumption that the mark is inherently distinctive. The alleged infringer may rebut the presumption by providing sufficient evidence that the mark is merely descriptive. If the USPTO required the applicant to provide proof of secondary meaning, the registrant is entitled to the presumption that the mark has acquired distinctiveness. In any event, if a mark is registered

---

[97]As noted above, the Court was not provided with a complete copy of the registration for Certified Knowledge Leader (CKL).

[98]*Retail Services*, 364 F.3d at 544 (quotation and citations omitted); *see also Creative Gifts*, 235 F.3d at 545 (citation omitted).
    Although the Court recognizes that the abbreviation or acronym appears to be the first letter of each of the composite words, presumably, the USPTO also had this information.

with the USPTO, there is a presumption that it is not merely descriptive because it must either be inherently distinctive or have acquired distinctiveness.[99]

In this case, it is not clear how the USPTO registered these three marks. KM Mentor provides argument as to both inherent distinctiveness and acquired distinctiveness. The KMPro parties merely state that the marks are § 1(a) Registered Marks. The USPTO required the KMPro parties to disclaim the phrase in the marks as merely descriptive, leaving only the abbreviation at issue. This makes it appear that the marks may have been registered on the basis of secondary meaning, but this is not clear.[100]

Because the record is unclear as to how the three marks at issue were registered and therefore what presumption the KMPro parties are entitled to, the Court will not engage in a detailed analysis with respect to descriptiveness and secondary meaning.[101] Suffice to say, the KMPro parties are entitled to a presumption of validity and the Court concludes that KM Mentor has not produced sufficient probative evidence at this time to overcome the presumption of validity.[102] Furthermore, if the issue comes down to secondary meaning, the question of whether a trademark has acquired

---

[99]*See Two Pesos*, 505 U.S. at 769.

[100]This is further complicated by the fact that the abbreviations "CKL," "CKMI," and "CKM" now appear to be federally registered. The parties disagree as to whether they were registered on the basis of secondary meaning in part or in whole. As noted above, they are not included in the KMPro parties' complaint and were registered two years after the KMPro parties' complaint was filed. As such, these marks are not at issue.

[101]While there may not be any additional evidence as to how the USPTO registered these marks, this was not pointed out to the Court. If there is not this information, the Court will address this issue at trial.

[102]The same type of evidence required to rebut the presumption that the marks are not generic is required to rebut the presumption that the marks are inherently descriptive. At trial, it will ultimately be the KMPro parties' burden to establish trademark infringement.

secondary meaning is generally a question of fact and should not be decided in a summary fashion.[103] As such, KM Mentor's motion for summary judgment as to Count I is denied.

### 2. Count III (Kansas Trademark Act) - Certified Knowledge Manager (CKM)

Certified Knowledge Manager (CKM) is not federally registered, but it is registered in Kansas. "The Kansas Trademark Act is the state counterpart of the Lanham Act."[104] K.S.A. § 81-220(b) states:

> The intent of this act is to provide a system of state trademark registration and protection substantially consistent with the federal system of trademark registration and protection under the trademark act of 1946, as amended. To that end, the construction given the federal act should be examined as persuasive authority for interpreting and construing this act.

The elements of proof under both the Kansas Trademark Act and the federal Lanham Act "are identical - in order to claim a protected interest, the party must establish ownership of, or a protectable interest in, the trademark."[105]

Although the Kansas Trademark Act is a counterpart to the Lanham Act and construction of the federal act should be examined as persuasive authority, the mark registered in Kansas is not entitled to a presumption of validity.[106] Under the Lanham Act, there is a statutory presumption of validity with respect to registered marks. 15 U.S.C. § 1115(a) provides that "a mark registered on

---

[103]*Marker Int'l v. DeBruler*, 844 F.2d 763, 764 (10th Cir. 1988).

[104]*Am. Plastic Equip., Inc. v. Toytrackerz, LLC*, 2008 WL 917635, at *8 (D. Kan. Mar. 31, 2008).

[105]*Id.* at *12.

[106]Neither party addresses the presumption of validity in Case No. 06-2381 nor in Case No. 06-2461. KM Mentor simply addresses the mark as an unregistered mark not entitled to a presumption of validity presumably because it is not registered with the USPTO. The KMPro parties do not provide a response. However, in Case No. 06-2195, the KMPro parties assert that the Kansas mark is entitled to a presumption of validity. Whether the Kansas mark is entitled to a presumption of validity is a question of law that the Court must answer when determining whether the mark is protectable.

the principal register . . . shall be admissible in evidence and shall be prima facie evidence of the validity of the registered mark . . . ."  This presumption is not provided by the Kansas Trademark Act.[107]

In addition, it appears that the requirements for registering a mark in Kansas do not involve the same requirements as registering a mark with the USPTO.  There are no provisions in the Kansas Trademark Act similar to the Lanham Act which provide for a detailed application process, publication of the application, and an examination by an examiner.[108]  Indeed, it appears that the KMPro parties filed their application for registration of this mark in early February 2006, and the registration was granted within days.[109]  Because Kansas does not have the detailed and structured requirements for registering marks as the Lanham Act and does not specifically provide for a statutory presumption of validity upon registration, there is no presumption of validity with respect to the mark registered in Kansas.  Accordingly, the KMPro parties have the burden in demonstrating that they have a valid and protectable mark and that it is not generic.

---

[107]The Kansas Court of Appeals recognizes that there may be provisions in the Kansas Trademark Act that differ from the federal Lanham Act.  *See, e.g, Harp v. Appliance Mart, Inc.*, 16 Kan. App. 2d 696, 699, 827 P.2d 1209, 1212 (1992) (interpreting Kansas' previous Trademark Act and stating that "[w]hen Kansas enacted its law, it chose not to include that portion of the federal law granting protection to a mark that has become distinctive based on continuous use for five years.").

[108]*See, e.g.*, 15 U.S.C. § 1051 (application for registration; verification).

[109]The KMPro parties' complaint and counterclaims allege that they filed their registration for the mark, Certified Knowledge Manager (CKM), on February 9, 2006 and were granted the registration on February 13, 2006. Documents provided in Case No. 06-2195 demonstrate that the mark was registered on February 9, 2006, and it is unclear whether it was filed on February 9, 2006 or February 1, 2006.  In any event, at the most, a time period of eight days elapsed between application and registration of this mark in Kansas.
In the KMPro parties' response to Triple-I's motion for summary judgment in Case No. 06-2195, they contend that eight days is more than sufficient for a state employee to conclude that the mark is not generic.  They, however, do not direct the Court to any evidence for support. There is no case law regarding the presumption of validity with respect to a mark registered in Kansas.

KM Mentor contends that this mark is generic.[110] Here, KM Mentor sets forth evidence of testimony from several individuals in the knowledge management field, including key individuals from KMPro, that the term "knowledge manager" generally refers to a job title or person working the knowledge management field. The dictionary definition for "certified" indicates "one to whom a certificate or license has been issued." In addition, KM Mentor has provided excerpts of several knowledge management books and articles reflecting the use of certified knowledge manager, as well as a job posting for a Certified Knowledge Manager. There is also evidence that CKM is a commonly used acronym for certified knowledge manager.

Furthermore, KM Mentor has provided a copy of Weidner's USPTO application in which the examining attorney found that the proposed mark merely describes the goods/services. The USPTO's examining attorney stated that it was merely descriptive of the subject matter of the applicant's services and that Certified Knowledge Manager and CKM were common industry terms. Because of the widespread use of these terms, the USPTO's examining attorney refused Weidner's application.

Although it is the KMPro parties' burden to demonstrate that they have a protectable mark, they have failed to come forward with evidence. The KMPro parties have not provided the Court with *any* evidence, such as consumer surveys or the use of the term in media publications indicating that the term Certified Knowledge Manager (CKM) is not generic or merely descriptive. As noted, the KMPro parties do not specifically respond to the motion in Case No. 06-2381 and with respect

---

[110]The law set forth with respect to whether a mark is generic is applicable here as well.

to the response filed in Case No. 06-2461, they provide no evidence for support of their contentions and denials as they do not attach any exhibits and frequently fail to cite to the record.[111]

Here, the mark Certified Knowledge Manager (CKM) is a combination of three words, all individually disclaimed, followed by an acronym that is the first letter of these three words. The combination of these three component words does not change the genericness or descriptiveness of the three component words. The words simply indicate that an individual is a certified knowledge manager. The acronym CKM, as recognized by the USPTO examining attorney and numerous individuals involved in the knowledge management field, simply stands for certified knowledge manager. Here, the term indicates a general class of goods and merely describes the type of product.

KM Mentor has put forth evidence as to the genericness of this term and the KMPro parties have simply not directed the Court to any relevant evidence that this term is not generic. As such, KM Mentor is granted summary judgment as to Count III.

### 3. Count II (Unfair Competition under 15 U.S.C. § 1125(a)); Count IV (Common Law Unfair Competition); Count VI (Contributory Trademark Infringement); and Count VII (Cybersquatting)

As to Counts II, IV, VI, and VII, ownership of a distinctive and protectable mark is also an essential prerequisite of each of these claims.[112] Relying on their previous argument that the marks

---

[111]With respect to the KMPro parties' response in Case No. 06-2195, they simply do not direct the Court to any relevant evidence that demonstrates that there is a question of fact with respect to whether this term is not generic.

[112]*See Univ. of Kansas v. Sinks*, 565 F. Supp. 2d 1216, 1256-57 (D. Kan. 2008) (citing *Donchez*, 392 F.3d at 1215)) (as to Count II); *Health Care & Ret. Corp. of Am. v. Heartland Home Care, Inc.*, 396 F. Supp. 2d 1262, 1268 (D. Kan. 2005) (as to Count IV); *The Golf Warehouse,* 142 F. Supp. 2d at 1312 (as to Count VII).
With respect to Count VI (the KMPro parties' contributory trademark infringement claim), the Court notes that "if a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorily responsible for any harm done as a result of the deceit." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854 (1982). "The elements of a contributory liability claim are thus (1) supply of a product and (2) knowledge of direct infringement." *Procter & Gamble Co. v. Haugen*, 317 F.3d 1121, 1128 (10th Cir. 2003). While a protectable mark is not stated as an essential element, it stands to reason that there cannot be contributory trademark infringement without an underlying protectable trademark.

are neither distinctive nor protectable, KM Mentor contends that they are entitled to summary judgment as to these four claims. For the reasons stated above that the Court cannot conclude as a matter of law that the three federally registered marks are not distinctive and protectable, the Court denies KM Mentor's motion for summary judgment as to these four counts with respect to the three federally registered marks. With respect to the mark registered in Kansas, because the Court has concluded that there is no protectable interest in this mark, the Court grants KM Mentor's motion for summary judgment on these four counts with respect to the mark registered in Kansas.

### 4. Count V - Tortious Interference with Business Expectancies

The parties cite to both Virginia and Kansas law. Under Virginia law, the elements required for a prima facie showing of tortious interference are:

> (I) the existence of a valid contractual relationship or business expectancy; (ii) knowledge of the relationship or expectancy on the part of the interferor; (iii) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (iv) resultant damage to the party whose relationship or expectancy has been disrupted.[113]

Under Kansas law, the required elements are:

> (1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or expectancy by the defendant; (3) that, except for the conduct of the defendant, plaintiff was reasonably certain to have continued the relationship or realized the expectancy; (4) intentional misconduct by defendant; and (5) damages suffered by plaintiff as a direct or proximate cause of defendant's misconduct.[114]

Under either Virginia or Kansas law, knowledge of the relationship or expectancy on the part of the interferor is required. Here, Douglas Weidner asserts that he and KM Mentor were not aware

---

[113]*DurretteBradshaw, P.C. v. MRC Consulting, L.C.*, 670 S.E. 2d 704, 706 (Va. 2009).

[114]*Turner v. Halliburton Co.*, 240 Kan. 1, 12, 722 P.2d 1106, 1115 (1986).

of any business relationship between KMPro or Hudson and the U.S. Army or Cubic Defense Applications. The KMPro parties have not directed the Court to any evidence showing that there is a genuine issue of material fact as to whether Douglas Weidner or KM Mentor had knowledge of the KMPro parties' business relationship or expectancy with the U.S. Army and its contractor, Cubic. Furthermore, the KMPro parties have not directed the Court to any evidence as to the existence of a business relationship or expectancy with respect to the U.S. Army or its contractor, Cubic. Finally, the KMPro parties have not directed the Court to any evidence as to the other elements of a tortious interference claim. As such, KM Mentor is entitled to summary judgment on the KMPro parties' tortious interference claim.

### 5. Count X - Civil Conspiracy to Tortiously Interfere, Infringe Marks, and Unfairly Compete

"A civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by unlawful means."[115] KM Mentor contends that there is no evidence that they entered into an agreement to perform an illegal act or perform a legal act in an improper manner. Douglas Weidner asserts that neither he nor KM Mentor "ever agreed with any other person to tortiously interfere with any contract or business relationship of KMPro or Hudson to infringe any trademark rights belonging to KMPro or Hudson, or to unfairly compete with them in any way." In response, the KMPro parties do not direct the Court or provide the Court with any evidence indicating a genuine issue with respect to whether a conspiracy existed. Accordingly, KM Mentor is granted summary judgment on this claim.

---

[115]*See Ross v. Peck Iron & Metal Co.*, 264 F.2d 262, 268 (4th Cir. 1959); *see also Stoldt v. City of Toronto*, 234 Kan. 957, 966-67, 678 P.2d 153, 161 (1984).

### 6. Count XIII - Fraud

This claim was addressed above, and the Court granted KM Mentor's motion for judgment on the pleadings as to this claim or in the alternative its motion for summary judgment. As such, the Court will not address it here.

Accordingly, KM Mentor is denied summary judgment as to Count I and granted summary judgment as to Counts III, V, X, and XIII. With respect to Counts II, IV, VI, and VII, KM Mentor is granted summary judgment in part with respect to the Kansas mark and denied summary judgment in part with respect to the three federally registered marks.

## V. The KMPro Parties' Motions for Summary Judgment

The standards for summary judgment and the local rule requirements for summary judgment briefing were set forth above.[116]

### A. KM Mentor's Motion to Strike (Doc. 111)

Before addressing the substance of the KMPro parties' motions for summary judgment and the uncontroverted facts, the Court will address KM Mentor's objections to two declarations filed in support of the KMPro parties' motion for summary judgment. KM Mentor filed a Second Motion

---

[116]A majority of the facts cited by the KMPro parties in briefing these motions are unsupported by the record. For example, in Case No. 06-2381 in Doc. 99, the KMPro parties' fact number 15 states that "KMMentor, thus, was not in existence when the material registered under these copyrights is claimed to have first been created in 2001. Complaint, Exhibit ___-___; Smiley Dec., ¶ 2, Weidner deposition, Vol. 1, ____." When KM Mentor objected to this fact because it was not supported by the record, the KMPro parties provide no logical response. Instead of addressing the fact that there was no record cite and it had been left blank, the KMPro parties inexplicably state that KM Mentor's response to Facts 5 through 7 and 14 demonstrate that this fact is true.

Furthermore, there are numerous times in the KMPro parties' reply that they state that this fact is subject to proof at trial. If this is so, the Court is at a loss as to why a summary judgment motion was filed indicating that there were no genuine issues of material fact with regard to these issues. The Court will only set forth facts that are uncontroverted and properly supported.

to Strike Declarations Filed in Support of Motion for Partial Summary Judgment (Doc. 111).[117]

They argue that the declarations of John Leitch and Dan Kirsch should be stricken as lacking

personal knowledge and for offering inadmissible legal and expert opinion, hearsay, irrelevant

information, and conclusory statements based upon an insufficient foundation.  Specifically, KM

Mentor references two of the seven paragraphs contained in Kirsch's affidavit and twenty-two of

the forty-nine paragraphs contained in Leitch's affidavit.

In response, it appears that the KMPro parties assert that rather than strike the affidavits, the

Court should instead disregard any portion that does not contain admissible evidence.  In addition,

they contend that the declarations contain admissible evidence based on the declarant's personal

knowledge gained from knowledge of the Weidner parties.

Fed. R. Civ. P. 56(e)(1) provides:

A supporting or opposing affidavit must be made on personal knowledge, set out
facts that would be admissible in evidence, and show that the affiant is competent to
testify on the matters stated. If a paper or part of a paper is referred to in an affidavit,
a sworn or certified copy must be attached to or served with the affidavit. The court
may permit an affidavit to be supplemented or opposed by depositions, answers to
interrogatories, or additional affidavits.

D. Kan. Rule 56.1(d) also provides:

All facts on which a motion or opposition is based shall be presented by affidavit,
declaration under penalty of perjury, and/or relevant portions of pleadings,
depositions, answer to interrogatories and responses to requests for admissions.
Affidavits or declarations shall be made on personal knowledge and by a person
competent to testify to the facts stated which shall be admissible in evidence. Where
facts referred to in an affidavit or declaration are contained in another document,
such as a deposition, interrogatory answer, or admission, a copy of the relevant
excerpt from the document shall be attached.

---

[117]It is entitled a "second" motion because KM Mentor previously filed a motion to strike declarations (Doc.
82 in Case No. 06-2381) that the Court denied as moot.

"Under the personal knowledge standard, an affidavit is inadmissible if the witness could not have actually perceived or observed that which he testifies to."[118] "[S]tatements of mere belief in an affidavit must be disregarded."[119] The court should also disregard legal conclusions.[120] In addition, the substance of the evidence contained in an affidavit must be admissible at trial, and the court "should disregard inadmissible hearsay statements contained in affidavits."[121] "[C]onclusory and self-serving affidavits are not sufficient."[122] To enforce Fed. R. Civ. P. 56(e), "the court ordinarily does not strike affidavits, but simply disregards those portions that are not shown to be based upon personal knowledge or otherwise do not comply with Rule 56(e)."[123]

### *Leitch's Declaration*

The Court will not strike the affidavit in its entirety but will instead disregard the paragraphs that do not comply with Fed. R. Civ. P. 56(e) and D. Kan. Rule 56.1(d). KM Mentor objects to 22 of the 49 paragraphs contained in Leitch's declaration. With regard to Paragraphs 3, 8, 25, and 29, these specific paragraphs are not cited to in the KMPro parties' fact section in their summary judgment motion. As such, the Court will not address the admissibility of these paragraphs.

---

[118]*Argo v. Blue Cross & Blue Shield of Kan., Inc.,* 452 F.3d 1193, 1200 (10th Cir. 2006) (internal quotation and citations omitted).

[119]*Id.* (internal quotation and citation omitted).

[120]*See Summit Fin. Res., L.P. v. Kathy's Gen. Store, Inc.,* 2009 WL 2106102, at *2 (D. Kan. Jul. 16, 2009) (citation omitted); *see also Jones v. Barnhart,* 349 F.3d 1260, 1270 (10th Cir. 2003) (finding that district court did not abuse its discretion in relying on the declarations to the extent they contained relevant and admissible evidence and disregarding inadmissible hearsay and legal conclusions).

[121]*Argo*, 452 F.3d at 1199 (citation omitted).

[122]*Murray v. City of Salupa*, 45 F.3d 1417, 1422 (10th Cir. 1995) (citation omitted).

[123]*Stevens v. Water Dist. One of Johnson County*, 561 F. Supp. 2d 1224, 1231 (D. Kan. 2008).

As to Paragraphs 22, 30-37, 39, 44, and 48, these are not based on personal knowledge. These paragraphs, therefore, are stricken.

As to Paragraphs 33, 37, 38, 40, and 43, these are conclusory and attempt to state a legal conclusion. These paragraphs, therefore, are stricken.

Paragraph 42 is unintelligible and the Court therefore did not rely upon it.

As to Paragraphs 24 and 44, these statements appear to rely on facts outside Leitch's personal knowledge, and there is no supporting document attached or referenced.[124] As such, these paragraphs are stricken.

The other paragraphs not specifically mentioned remain in the affidavit.

### *Kirsch's Declaration*

The Court notes that it cannot accurately read paragraphs 5 through 7 of Kirsch's declaration.[125] Nevertheless, KM Mentor asserts that paragraphs 6 and 7 should be stricken because they are not based on personal knowledge. However, these specific paragraphs are not cited to in the KMPro parties' fact section in their summary judgment motion, and the Court cannot read these factual contentions in the declaration. As such, the Court will not address the admissibility of these paragraphs.

Accordingly, KM Mentor's Second Motion to Strike Affidavit (Doc. 111) is hereby denied, but the Court has stricken the paragraphs within Leitch's affidavit not based on personal knowledge or merely stating legal conclusions.

---

[124]There is only one document attached to the affidavit which is unrelated to these facts.

[125]It appears that when the document was scanned in, the page was folded.

**B. Defendants Kirsch's, Leitch's, and Hulehan's Motion for Summary Judgment (Doc. 96)**

Defendants Kirsch, Leitch, and Hulehan assert that KMPro is a nonprofit corporation incorporated under the laws of Maryland, which is organized and conducted for public benefit and operated primarily for charitable, civic and/or educational purposes. They assert that they, as individual defendants, are immune from liability because they were working as volunteers for a non-profit corporation. The Court finds that there is a genuine issue of fact as to the fact of primary importance.

The first premise of Defendants' argument is based on the alleged undisputed fact that KMPro is a non-profit corporation. This fact, however, is not supported by the record and is in dispute.[126] Defendants Kirsch, Leitch, and Hulehan have not demonstrated that there is no genuine issue as to this material fact. Accordingly, the Court denies Defendants Kirsch's, Leitch's, and Hulehan's motion for summary judgment (Doc.96).

---

[126]In an effort to establish that KMPro is a non-profit corporation, the KMPro parties rely on pleadings. Although the KMPro parties have stated that KMPro is a non-profit corporation in several pleadings, KM Mentor's responsive pleadings do not support this fact. KM Mentor once stated that it lacked sufficient information as to the "non-profit" status of KMPro and therefore denied this aspect of the allegation and once stated that the fact was not "material" to the issue and requested that if the Court find the fact to be material, the opportunity to file supplemental material in opposition. In addition, KM Mentor directs the Court to an affidavit previously filed by John Leitch, in which he states that KM Mentor "improperly intangled KMPro and kept it from timely obtaining its IRS tax exemption as a non-profit entity."

**C. The KMPro Parties' Motion for Summary Judgment (Doc. 98)**

**1. Analysis**

The KMPro parties seek summary judgment as to Counts I, II, III, and IX.[127] The Court will address each claim.[128]

### a. Count I (Copyright Infringement) and Count II (Contributory Copyright Infringement)

KM Mentor asserts claims of copyright infringement and contributory copyright infringement against the KMPro parties. In the Complaint, KM Mentor asserts that it has complied with the Copyright Act and has filed for and received a copyright registration for the course content for the award of a Certified Knowledge Manager certification and derivative materials, a part of the Certified Knowledge Manager (CKM™) Program. These registrations are designated TX 6-109-725 and TX 6-109-726,[129] and copies of these registrations are attached to the Complaint.

The Complaint also alleges that KM Mentor has filed for and received a copyright registration for material presented in its website and other advertising materials. This registration is issued TXu 1-222-987, and a copy is attached to the Complaint. In addition, KM Mentor states that it has filed an application for copyright registration for an electronic version of materials and that a true and correct copy of this registration will be forwarded to the Court upon receipt from the

---

[127]The Complaint has thirteen claims, but KM Mentor included two IV's. This makes the breach of contract claim IX instead of VIII. The Court will refer to the breach of service agreement or breach of contract claim as Count IX because that is the actual number of the claim.

[128]Ordinarily, the Court would include an uncontroverted fact section with respect to a summary judgment motion as it did above. In this case, however, there are numerous disputed facts as to many issues, and the Court will only include the undisputed facts with regard to each specific claim. In addition, both parties rely heavily on the allegations in the complaint as support for their facts with regard to the KMPro parties' motion for summary judgment. Accordingly, the Court will rely on the complaint as well.

[129]The Complaint states TX 6-109-725 twice, but the attached materials indicate copyright registrations of TX 6-109-725 and TX 6-109-726.

Copyright Office. Plaintiffs attached to the Complaint their registration application, but there was no registration number as one had not been given by the United States Copyright Office.[130]

Since the development of the Training Products and the Certified Knowledge Manager (CKM™) Program and Advertising Material, KM Mentor alleges that it has been and still is the sole proprietor of all of its rights in the copyrights in the Certified Knowledge Manager (CKM™) Program and Advertising Material, and Defendants have violated and infringed its copyrights. The four registrations indicate that the name of the author and the copyright claimant is Douglas Thom Weidner.

"To establish copyright infringement, a plaintiff must prove (1) ownership of a valid copyright and (2) unauthorized copying of constituent elements of the work that are original."[131] A certificate of registration from the United States Copyright Office is usually "prima facie evidence of a valid copyright and of the facts stated in the certificate."[132] The defendant will then bear the burden of overcoming the presumption of validity.[133] "To rebut the presumption, however, a

---

[130]With regard to the fourth registration application, Plaintiffs have now provided the Court with the certificate of registration from the United States Copyright Office. The copyright registration number is designated as TXu1-309-316. The Certificate of Registration states that the application was received and registered on June 19, 2006. Plaintiffs filed suit on June 20, 2006.

[131]*Palladium Music, Inc. v. EatSleepMusic, Inc.*, 398 F.3d 1193, 1196 (10th Cir. 2005) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co*, 499 U.S. 340, 361 (1991)); *see also Thomas M. Gilbert Architects, P.C. v. Accent Builders & Developers, LLC*, 629 F. Supp. 2d 526, 530 (E.D. Va. 2008) (citing *Bouchat v. Balitmore Ravens, Inc.*, 241 F.3d 350, 353 (4th Cir. 2001)).

[132]*Palladium Music*, 398 F.3d at 1196 (citing 17 U.S.C. § 410(c)). 17 U.S.C. § 410(c) provides: "In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court."

[133]*Palladium Music*, 398 F.3d at 1196.

defendant sued for infringement must simply offer some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement."[134]

The KMPro parties assert that KM Mentor has failed to meet the threshold requirement of copyright ownership because of the inadequacy of their pleadings. They assert that KM Mentor has pled that it is the owner of the copyrights at issue and that it is the party bringing the claim, but the evidence demonstrates that Douglas Weidner is the registrant and owner of the copyrights. They claim that the certificate of registration is not entitled to a presumption of validity because of the inconsistent assertions in the complaint. Because Weidner is named as the author and copyright claimant in the certificate registration and it appears from the complaint that KM Mentor is making the copyright claim, the KMPro parties contend that KM Mentor has not established ownership of a valid copyright. In sum, the KMPro parties assert that KM Mentor has no valid copyright claim because KM Mentor has failed to establish that it is the owner of a valid copyright.

KM Mentor states that the copyright infringement and contributory copyright infringement claims were intended to be brought by both KM Mentor and Douglas Weidner. In addition, they state that they have provided evidence to demonstrate that KM Mentor is the exclusive licensee, beneficial owner, or assignee of the copyrighted material at issue. Accordingly, KM Mentor contends that it is a proper party and has standing to pursue the copyright infringement claims.

In response to the KMPro parties' motion for summary judgment, Weidner provides an affidavit in which he states that in 2001, he created written training materials for the Certified Knowledge Manager (CKM) workshop and subsequently obtained several copyright registrations for the Certified Knowledge Manager (CKM) Program Workshop Materials. Weidner is the

---

[134]*Id.* (quotation and citations omitted).

President of KM Mentor.  When KM Mentor became a limited liability company in 2002, Weidner granted KM Mentor an exclusive license to these training materials. On August 6, 2009, Weidner and KM Mentor executed a "Memorandum of Exclusive License" in which it states that it is to memorialize an exclusive license granted and effective between Weidner and KM Mentor as of March 19, 2002. In addition, in this written document, Weidner assigns to KM Mentor all causes of action and all rights to sue for infringement.

The copyright owner, or the owner of the exclusive right to the copyright, may bring a claim for copyright infringement so long as the infringement occurred during the time the party owned the copyright rights.[135] 17 U.S.C. § 501(b) provides in part that "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled . . .  to institute an action for any infringement of that particular right committed while he or she is the owner of it."

The transfer of a copyright must be in writing to be valid.[136]  Under 17 U.S.C. § 204(a), "[a] transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." Several circuits have  determined that an alleged third-party infringer does not have standing to invoke § 204(a).[137]  "[T]he chief purpose of section 204(a), (like the Statute of Frauds), is to resolve disputes between copyright owners and transferees and to protect copyright holders from persons mistakenly or fraudulently claiming oral

---

[135]*See Am. Plastic Equip., Inc. v. Toytrackerz, LLC*, 2009 WL 902422, at *5 (D. Kan. Mar. 31, 2009); *X-IT Products, L.L.C. v. Walter Kidde Portable Equip., Inc.*, 155 F. Supp. 2d 577, 602 (E.D. Va. 2001).

[136]17 U.S.C. § 204(a); s*ee also Toytrackerz*, 2009 WL 902422, at *5; *X-IT Products*, 155 F. Supp. 2d at 603.

[137]*Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586, 592-93 (7th Cir. 2003); *Imperial Residential Design, Inc. v. Palms Dev. Group, Inc.*, 70 F.3d 96, 99 (11th Cir. 1995). *See also X-IT Products*, 155 F. Supp. 2d at 603-04.

licenses or copyright ownership."[138] "[W]here there is no dispute between the copyright owner and the transferee about the status of the copyright, it would be unusual and unwarranted to permit a third-party infringer to invoke section 204(a) to avoid suit for copyright infringement."[139]

In this case, there was no written transfer of ownership or rights between Weidner, author and registrant of the copyrights, and KM Mentor until August 6, 2009.[140] Weidner and KM Mentor agree as to the status of the copyrights and license, and the KMPro parties, as alleged third-party infringers, do not have standing to challenge the lack of a writing evidencing the transfer of the copyrights between Weidner and KM Mentor.

In addition, numerous courts have determined that an oral assignment of copyright rights later reduced to writing satisfies the writing requirement of § 204(a).[141] "Courts have also enforced oral assignments which were not reduced to writing until after trial commenced."[142] While the assignment and exclusive license from Weidner to KM Mentor was not reduced to writing until after litigation commenced, this does not preclude KM Mentor from pursuing the copyright claims.

KM Mentor has demonstrated there is a genuine issue of material fact as to ownership because KM Mentor has produced sufficient evidence demonstrating that it may assert a copyright

---

[138]*Imperial Residential*, 70 F.3d at 99.

[139]*Id.*

[140]The August 6, 2009 "Memorandum of Exclusive License" provides that it is a memorialization of an exclusive license granted and effective as of March 19, 2002.

[141]*See X-IT Products*, 155 F. Supp. 2d at 603-04 (collecting several cases that "support the proposition that an oral assignment of copyright rights is an effective assignment if the oral assignment is subsequently memorialized in a written document."); *see also Huebbe v. Okla. Casting Co.*, 663 F. Supp. 2d 1196, 1206 (W.D. Okla. 2009) (collecting cases).

[142]*Huebbe*, 663 F. Supp. 2d at 1206 (collecting cases).

infringement claim if it is the exclusive licensee of the copyrights. Accordingly, the KMPro parties' motion for summary judgment as to Counts I and II of the Complaint is denied.

### b. Count III (Infringement of Trademark Acts)

The KMPro parties assert that KM Mentor should be required to come forward with facts showing that there is a genuine issue of fact as to which KM Mentor carries the burden at trial. Yet, the KMPro parties have failed at their initial burden. They have the burden in demonstrating to the Court the absence of a genuine issue of material fact with regard to an essential element of the nonmoving party's claim. The KMPro parties have not even identified to the Court the trademarks at issue. As such, the KMPro parties' motion for summary judgment on Count III is denied.

### c. Count IX - Breach of Contract

There are numerous disputes as to material facts. As noted above, the KMPro parties frequently state that these facts are subject to proof at trial. Accordingly, the KMPro parties' motion for summary judgment as to Count IX is denied.[143]

The KMPro parties' motion for partial summary judgment (Doc. 98) is denied in its entirety.

**IT IS ACCORDINGLY ORDERED** this 13th day of May, 2010 that KM Mentor's Motion for Judgment on the Pleadings (Doc. 87) is hereby granted.

**IT IS FURTHER ORDERED** that KM Mentor's Motion for Partial Summary Judgment (Doc. 90) is hereby granted in part and denied in part. KM Mentor is denied summary judgment as to Count I and granted summary judgment as to Counts III, V, X, and XIII. With respect to Counts

---

[143]KM Mentor did not file a motion for summary judgment as to the breach of contract claim but contends that the Court may grant such summary judgment in its favor *sua sponte* based upon the evidence presented in support of and opposition to the KMPro parties' motion for partial summary judgment filed by KMPro. The Court declines to do so.

II, IV, VI, and VII, KM Mentor is granted summary judgment in part with respect to the Kansas mark and denied summary judgment in part with respect to the three federally registered marks.

**IT IS FURTHER ORDERED** that KM Mentor's Second Motion to Strike Declarations in Support of Motion for Summary Judgment (Doc. 111) is hereby denied. The Court disregarded any statements not based on personal knowledge or stating legal conclusions.

**IT IS FURTHER ORDERED** that Defendants Kirsch's, Leitch's, and Hulehan's Motion for Summary Judgment (Doc. 96) is hereby denied.

**IT IS FURTHER ORDERED** that the KMPro Parties' Motion for Partial Summary Judgment (Doc. 98) is hereby denied.

**IT IS SO ORDERED**.

/s Eric F. Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE